Honorable Judge Smith Camp,　　　　　　　　　　　　　　　　　　　May 10, 2019

    I've been stressed and nervous since I sent in my Motion. I feel that I left something out that is important to me. I don't know what is suppose to be included or not. I don't want to make a life changing mistake because of my lack of knowledge or ignorance of this process. I hope that this motion appropriate and if you feel as if I need or should use a lawyer. I would be very grateful and it would be highly appreciated if you appointed me one.

    If you feel this motion is sufficient, I would like to proceed forward. I would be grateful for any and all help. I've read and viewed a lot of motions but I still don't fully understand. I think I read somewhere that a few years ago it was made easier for someone like me to file with little or no knowledge of how to do do. I pray for help in this matter.

    I'm including the original letter I prepared for my motion (section 3) as I was advised to redo and make it less personal and more professional. I wrote this letter from my heart and how I really felt, I can't get it out of my mind. I just have this feeling that it should have been included and that you need to read it. It is the things I struggle with everyday and night. My insides are telling me to send it.

    I'm also including an update on the US vs Marks case with the judge's comments. I'm also including the case US vs Simons. I find them really interesting. I hope that it is appropriate that I send these things to you. I don't want to regret not having sent them.

    I don't want to make any mistakes. I believe that I have this great opportunity and I feel I have prepared myself for this the last 16 plus years. I would hate to lose my chance of freedom on ignorance of the the law and the proper way to file a motion or prepare a brief.

    My family and I are pleading for the same justice and mercy that anyone that was put in a situation like mine would seek out if their loved one or child was unjustly sentenced or prosecuted under a misapplied statue.

Sincerely,


Jerry Urkevich 18411-047

OFFICE OF THE CLERK
2019 MAY 28 PM 4: 55
FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

To Honorable Judge Laurie Smith-Camp

    I acknowledge that as a young man I had no understanding as to what life would be like in prison and would have been shocked at the suggestion that I would possibly spend the rest of my life here. I was always a law abiding citizen, had a good job, coached Pop Warner football and enjoyed life. That all fell apart in a fast 2 ½ year period. Everything was taken away from me with no one to blame but myself, I did this to me.

    Today looking back, I never thought I'd have the life I have today. NO control over when I eat, sleep, talk to my family, take a shower, watch a movie, play softball or anything else in my life. There is just so much to it, I can't believe that I'm doing all that I'm doing or living like I'm living. It's an incredible amount of sadness I feel, but I've learned so much.

    I've spent many hours reflecting, looking back on my life and how it could've turned out through years I've lost. I question if maybe going to prison was the best thing for me, if it made me into a better person. But a life sentence? I don't believe that any path will lead to me dying in prison. I believe that it is finally my chance to catch a break and prove to my family, friends and even this court of the man I've become. All I need is a second chance at life. Only one chance and that's it? It just doesn't feel right. First time offender, no violence and a clean record while incarcerated. My criminal history is category 1.

    I've spent a lot of time over the last 16 years helping not only myself but others. I completed a drug class, parenting class, family living class plus other educational programs. That was early in my incarceration. I've always maintained employment, and maintained being write-up free. As the years went by, I found myself shifting towards a mentor role. I would spend a lot of time helping my fellow inmates in seeing the importance in staying off of drugs, spending time with family and making sure to not come back. I felt it real rewarding when I would get through to these guys. My mom has received numerous calls from these inmates upon their release on the impact I've made in their lives. They hear my voice talking in their head when they are about to make bad choices. It feels good to know that I have made an impact on their lives. It gives me the feeling of happiness I got when one of my players scored a touchdown or made a big play while I was their coach. I tried my best to make those individuals better people inside and out of prison. I feel I did a good job and it gave me a purpose and made me a better person for it.

    I was also involved in the suicide watch cadre. I got so much out of the experience that it's hard to believe. When you would go in and sit with an inmate for a second time and he would tell me that he was glad I came back and that he was waiting for me because he got so much out of our talks. It was a good feeling. When he was released back into the compound and would seek me out just to thank me, felt really good that I was involved in such a great program.

    I'm now 50 years old and have missed half of my 30's and all of my 40's. I have missed my nephews, nieces, cousins, and great niece's lives as they grew up,. Missed the passing of my Aunts and Uncle. My dad is 76 years old and is not doing well. I haven't seen him since 2011. My mom is 73 and trying hard to hold on in the hope I will get out,. I know she is slowing down but does her best to hide it from me. My family needs me now. They have looked out for me for the last 16 years and now it's time for me to do the same for them. I look at all these happy pictures of a happy family with me in them enjoying life with my family from before and then I look at all the pictures taken in the last 16 years with me not in them and I long to know the people in those pictures from more than just a phone call or a visit here and there. Now I have a chance. For the first time I really believe it is going to happen. I'm praying that you see it also.

    One of the main goals I have set for myself upon my release is to spend time at a Senior Living Center. My heart tells me to find senior citizens that have no kids or family. I want to spend time playing cards, taking them to a ballgame or doing whatever makes them happy. My heart aches for those who have to grow old alone. That is my biggest fear. What happens when my parents pass? I

have no kids and my nieces and nephews don't really know me. I had a fear of not knowing what would become of me in old age. I want to bring some happiness to the lives of these senior citizens now that I'm getting this second chance, a second chance at life. I will not mess this up. I will not let my family or this court down. I will do good things. I am a better person.

At 50 years of age and with your help, I will start a new chapter in my life., Make up all the time I missed with my family and friends. I will be a law abiding, productive citizen. I've spent the last 16 years improving myself. It is time to prove it., I've been a write-up free, productive inmate and that will transfer to the outside. I will make you and my family proud. I will accomplish a lot in my second chance. I have a great support group of many family members and life-long friends to help me with this second chance at life. I will not let myself fail. My faith will get me through this great time.

If I was sentenced today, I would receive a 248 month sentence. I've served around 190 months already. With this opportunity that the passing of the First Step Act has given me I will be able to start the final chapter of my life. I pray that I will be given this great opportunity that has come my way. I see the joy it has given other people in my same situation. It's finally my time as I have waited and prayed for this opportunity. It has come. Thank you very much. I promise to not let you down. This law was clarified to stop the injustice that has happened with these stacking of the 924(C)'s.

Jerry Urkevich 18411-047

# WILL FIRST STEP LET THE HOLLOWAY BLACK SWAN SWIM AGAIN? – UPDATE FOR MARCH 26, 2019

MARCH 26, 2019 LEAVE A COMMENT

We post news and comment on federal criminal justice issues, focused primarily on trial and post-conviction matters, legislative initiatives, and sentencing issues.

## A REMARKABLE ORDER, A "HOLLOWAY" EASTER EGG

A fascinating order from Judge David Larimer in the Western District of New York is focusing attention on an overlooked section of the First Step Act.

First, the order: thirteen years ago, Chad Marks took a drug count and two 18 USC 924(c) counts to trial. Had he pled guilty like his co-defendants, he would be home now. But he rolled the dice and lost, and Judge Larimer was forced by statute to hammer him with 40 years, a mandatory minimum of 10 for the drugs, 5 for the first 924(c) and 25 for the second 924(c).

Over 13 years, the Judge said in his Order, Chad has gained a college degree and completed over 100 programs. Now Chad has asked the judge to ask the U.S. Attorney to agree to let the judge vacate one of the 924(c) convictions, which would cut Chad to 15 years and get him immediate release. The Judge's Order, citing Chad's "extraordinary accomplishments," asks the Government to "carefully consider exercising his discretion to agree to an order vacating one of Marks' two Section 924(c) convictions. This would eliminate the mandatory 25-year term that is now contrary to the present provisions of the statute. Congress has now recognized the injustice of 'stacking'."

You may remember the Holloway decision of a few years ago, where EDNY Judge Gleeson convinced the U.S. Attorney to consent to an otherwise unauthorized court order cutting an inmate's sentence, because of the inmate's prison accomplishments and the harshness of the mandatory minimums. I wrote about it at the time, referring to the decision as a "black swan" and calling out some hopemongers who were trying to fleece inmates of money to prepare their own "Holloway" motions. Holloway had a cold fusion problem: it was elegant, even beautiful, but it was not replicable. Instead, a Holloway motion would only work when the court and the U.S. Attorney agreed to ignore the strict procedural rules against granting the remedy the inmate sought.

Holloway was a grand conspiracy among the players – defendant, judge and prosecutor – to let the defendant out of prison. I praised its wisdom and creativity, even while lamenting that it would hardly work anywhere else in the nation, where jurists like Judge Gleeson, U.S. Attorneys like Loretta Lynch, and defendants like Francois Holloway were not in the same courtroom at the same time.

But First Step may have changed all of that, in a way Congress probably neither noticed or intended. Everyone knows that the Act changed compassionate release to let a prisoner take his or her request under 18 USC 3582(c)(1) to court if the Federal Bureau of Prisons either turns it down or (as

happens more often) fails to act on it within 30 days. But what went unnoticed in all the talk about dying inmates is this: there is more than one way to get a sentence modified under 3582(c)(1).

In computer software and media, an Easter egg is an intentional inside joke, hidden message or image, or feature hidden in a program. The Easter egg in compassionate release is subsection 3582(c)(1)(A)(i) permits sentence reduction for any "extraordinary and compelling" reason, not just illness. Traditionally, inmates have been referred by the BOP for acts of heroism. I knew of one UNICOR worker referred under (c)(1)(A)(i) who save the life of his BOP staff supervisor when the man collapsed of a heart attack. But "compelling and extraordinary" has hardly ever been used, because the BOP had to propose it to the court, and the BOP did not care to do so.

That has changed. As Ohio State law professor Doug Berman noted last week in his Sentencing Law and Policy blog when writing about the Chad Marks' case, "I [use] the term "extraordinary and compelling" in this post because I do not think the federal judge here has to rely on the U.S. Attorney to do justice in this case now that the First Step Act has changed the process around judicial consideration of sentence modifications under 18 USC 3582(c)(1)(A)(i)… [The] Act now provides that an inmate can bring a request to "modify a term of imprisonment" directly to a sentencing court (rather than needing a motion made by the Bureau of Prison) based on the claim that "extraordinary and compelling reasons warrant such a reduction." This is what gets described often as the "compassionate release" provision of federal law, and most generally assume that it is only applicable to sick and dying prisoners. But, ever the textualist, I am eager to highlight to everyone that Congress only formally requires a judge to find "extraordinary and compelling reasons warrant such a reduction." As I read this new Marks Order, I think Judge Larimer has already essentially made such a finding."

I know of one inmate who already is using his case history and BOP record in asking a court for a (c)(1)(A)(i) sentence modification. I do not think, generally speaking, such a motion will work unless the judge already is unhappy with the length of a mandatory sentence. But that will hardly stop the shadier "paralegal" shops from trying to sell people Holloway motions upgraded to (c)(1)(A)(i)s.

Order, United States v. Marks, Case No. 03-CR-6033 (WDNY Mar 14, 2019)

Sentencing Law and Policy, Federal judge pens extraordinary and compelling order requesting US Attorney to vacate old stacked 924(c) conviction in extraordinary and compelling case (Mar 19)

– Thomas L. Root

# A STRONG 924 CASE

An oral argument last Tuesday in Rehaif v. United States took a surprising turn, and could make a Supreme Court decision in the case the "sleeper" of the Court's 2018-2019 term.

The case asks whether the "knowingly" provision of 18 USC 924(a)(2) applies to both the possession and status elements of an 18 USC 922(g) crime of unlawful possession of a firearm, or whether it applies only to the possession element. Sec. 924(a)(2) requires that a violation of 922(g) be committed "knowingly."

Hamid Rehaif came to the US to attend college. Under immigration law, he retained his student-visa status only as long as he remained enrolled as a full-time student. He flunked out. Instead of leaving the country, however, he stuck around. One day he went to a shooting range, rented a Glock and blasted away at targets for an hour.

Hammy was convicted under USC 922(g), the "felon-in-possession" statute. That's because one subsection makes it unlawful to possess a firearm while in the United States illegally. Hammy argued he did not know he was in the country illegally, but the trial court said that did not matter. The only "knowledge" provision was that he knew he possessed a gun or ammo, even just for an hour.

At oral argument last week, the Supreme Court justices suggested that if they rule that the government must prove an unauthorized immigrant with a firearm knew he was in the country illegally, that ruling will necessarily mean it will have to prove that a felon with a firearm knows he is a felon.

If Hamid's conviction is reversed, the consequences could be huge. Only Justice Alito seemed to accept the current view that a defendant need not know that he or she is a felon to violate the statute.

Justice Ginsburg wondered what would happen if the Court that status under 922(g) requires knowledge: "How many people who have been convicted under felon-in-possession charges could now say, well, the Supreme Court has said I can't be convicted of [the] crime I was convicted of, so I want to get out. I want habeas." The government's lawyer responded that "under Bousley v US, the defendant would have to show on collateral review that he was actually innocent, meaning he actually did not know about his status."

It is tricky to predict a case's outcome from oral argument, but the headcount strongly suggests Hamid will win. If the Supremes' decision holds that knowledge of status is an element of a 922(g) offense, a flood of actual-innocence 2241 petitions is sure to follow. That would make Rehaif the "sleeper" decision of the year.

Rehaif v US, Case No. 17-9560 (Supreme Court, decision by June 30, 2019)

# DEFENSES FAVORITE JUDGE

At age 92, Senior Judge Jack Weinstein is not only still on the Eastern District of New York federal bench. He remains one of the most thoughtful federal judges in America, prone to issuing detailed and resource-rich decision.

In a 15-page opinion last week, Judge Weinstein released Cheyenne Simons under the retroactive Fair Sentencing Act after Chey had served 11 of his 12-year sentence. This does not sound like such a deal, except that as a career offender with 50 grams of crack, Cheyenne had faced a 262-month Guidelines term in 2008, when Judge Weinstein sentenced him to 144 months instead. What's more, because of a quirk in how EDNY was applying 924(c) back then, Chey did not get a 5-year mandatory consecutive sentence for the gun charge then, but he was obligated to get it now.

Cheyenne had pled to 50 grams of crack, but at the 2008 sentencing, the court attributed over 500 grams of crack to him. The government argued that under the FSA resentencing, the 500 grams made him subject to the new 280-gram 10-year minimum. Judge Weinstein refused: "Any argument that Simons is ineligible for relief on the basis that his actual conduct involved distribution of 280 grams or more of cocaine base, triggering the 841(b)(1)(A) penalties and a 10-year minimum term of imprisonment, is unsound. Statutory penalties are determined by facts submitted to a grand jury, a trial jury, or established by a guilty plea. Findings by a judge may be used to determine a sentence within the statutory penalties, but do not establish statutory penalties and cannot change the mandatory minimum sentence now applicable."

Although the 924(c) penalty left Chey's Guidelines at 262-327 months, Judge Weinstein held that the retroactive FSA gave him the discretionary authority to reduce the sentence. Because Chey had "taken substantial steps during his period of incarceration to achieve the rehabilitative goals sought by the original sentence imposed," Judge Weinstein set him free.

US v Simons, 2019 U.S. Dist. LEXIS 67964 (EDNY, Apr. 22, 2019)